1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

9  LEO SISCO,                                    )    1:09-CV-01612 LJO JMD HC
                                                 )
10          Petitioner,                          )    FINDINGS AND RECOMMENDATIONS
                                                 )    REGARDING PETITION FOR WRIT OF
11     v.                                        )    HABEAS CORPUS
                                                 )
12  JAMES D. HARTLEY,                            )
                                                 )
13          Respondent.                          )    THIRTY (30) DAY DEADLINE TO FILE
                                                 )    OBJECTIONS
14

15          Leo Sisco (hereinafter "Petitioner") is a prisoner proceeding pro se with a petition for writ of

16  habeas corpus pursuant to 28 U.S.C. 28 U.S.C. § 2254.

17                              **PROCEDURAL HISTORY**

18          Petitioner is currently in the custody of the California Department of Corrections and

19  Rehabilitation pursuant to a 1995 conviction for second degree murder.  The trial court sentenced

20  Petitioner to a prison term of fifteen years to life.  Petitioner is not currently challenging his

21  conviction; rather, the instant petition challenges the decision by the California Board of Parole

22  Hearings (the "Board") to deny Petitioner parole.  Petitioner appeared before the Board on November

23  1, 2006.

24          On February 22, 2008 Petitioner filed a petition for writ of habeas corpus with the Tulare

25  County Superior Court challenging the Board's decision.  The Superior Court issued a reasoned

26  opinion denying the petition on March 4, 2008.  (Pet. Ex. A.)

27          Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal

28  and the California Supreme Court.  The California Court of Appeal and  the California Supreme

U.S. District Court
E. D. California
                                                 1

1   Court issued summary denials of the petitions.  (Pet. Exs. B, C.)

2          On September 10, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.

3   Respondent filed an answer to the petition on March 8, 2010, to which Petitioner filed a traverse on

4   April 1, 2010.[1]

5                                              **FACTUAL BACKGROUND**

6          The Board incorporated into the record a summary of the offense taken from the probation

7   officer's report.  (Pet. Ex. D, Tr. Parole Hearing, at 15-16.)  According to the probation officer's

8   report, Steven Luis became involved in a physical altercation with the victim, Jason McAfee.  (Id. at

9   16.)  After Mr. McAfee bested Mr. Luis, Mr. McAfee walked away and was immediately confronted

10  by Rodney Rodriguez, a friend of Mr. Luis.  (Id. at 17.)  Mr. Rodriguez stated that he could kick Mr.

11  McAfee's "ass" and asked the victim if he wanted to box.  (Id.)  Mr. McAfee raised his hands to

12  signal that he did not want to fight Mr. Rodriguez but Mr. Rodriguez and Petitioner removed their

13  shirts as if to prepare for a fight. (Id.)  Mr. Rodriguez then struck Mr. McAfee with several blows to

14  the facial area, knocking Mr. McAfee unconscious.  Mr. Rodriguez, Petitioner, and John Gregorich

15  proceeded to kick and beat Mr. McAfee as he laid unconscious.  (Id. at 18.)  Mr. McAfee died as a

16  result of a skull fracture sustained from blunt trauma to the head.

17         Petitioner did not discuss the commitment offense during the hearing.  (Id. at 16.)  The Board

18  incorporated into the record Petitioner's written version of events contained in his Central File.[2]  (Id.

19  at 19-20.)  In this version, Petitioner contends that he arrived during the physical altercation between

20  Mr. Luis and the victim and that while he removed his shirt, he did not participate in the attack on

21  Mr. McAfee.  (Id. at 20-21.)

22                                                  **DISCUSSION**

23  **I.      Jurisdiction**

24         A person in custody pursuant to the judgment of a State court may petition a district court for

25  relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or

26  _____

27     [1]Respondent admits that the petition is timely and that Petitioner has exhausted his state remedies.  (Resp't Answer
   at 2:5-2:6.)

28     [2]The Board failed to state when this written statement was drafted.

1  treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529

2  U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by

3  the United States Constitution.  Petitioner is currently incarcerated at Avenal State Prison, which is

4  located in Kings County.  As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the

5  Court has jurisdiction over Petitioner's application for writ of habeas corpus.  *See* 28 U.S.C. §

6  2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district

7  court where the petitioner is currently in custody or the district court in which a State court convicted

8  and sentenced Petitioner if the State "contains two or more Federal judicial districts").

9  **II.      AEDPA Standard of Review**

10  On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

11  1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

12  enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499

13  (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently

14  governed by its provisions.  *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  Thus, the petition

15  "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was

16  'contrary to, or involved an unreasonable application of, clearly established Federal law, as

17  determined by the Supreme Court of the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.

18  2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*,

19  603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

20  Title 28 of the United States Code, section 2254 remains the exclusive vehicle for

21  Petitioner's habeas petition as Petitioner is in the custody pursuant to a state court judgment.  *See*

22  *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-27 (9th Cir. 2006) *overruled in part*

23  *on other grounds*, *Hayward*, 603 F.3d at 555.  As a threshold matter, this Court must "first decide

24  what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United

25  States.'"  *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly

26  established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the

27  Supreme Court's] decisions as of the time of the relevant state-court decision."  *Id*. (quoting

28  *Williams*, 529 U.S. at 412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is

1   the governing legal principle or principles set forth by the Supreme Court at the time the state court

2   renders its decision." *Id*.  Finally, this Court must consider whether the state court's decision was

3   "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id*. at 72

4   (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant

5   the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

6   question of law or if the state court decides a case differently than [the] Court has on a set of

7   materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72.

8   "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state

9   court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

10  applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal

11  court may not issue the writ simply because the court concludes in its independent judgment that the

12  relevant state court decision applied clearly established federal law erroneously or incorrectly.

13  Rather, that application must also be unreasonable." *Id*. at 411.  A federal habeas court making the

14  "unreasonable application" inquiry should ask whether the State court's application of clearly

15  established federal law was "objectively unreasonable." *Id*. at 409.

16        Petitioner bears the burden of establishing that the state court's decision is contrary to or

17  involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*,

18  94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth

19  Circuit precedent remains relevant persuasive authority in determining whether a state court decision

20  is objectively unreasonable.  *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the

21  Supreme Court's precedents are binding on the Arizona court, and only those precedents need be

22  reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200

23  F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer

24  reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on

25  a federal Constitutional issue . . . This does not mean that Ninth Circuit caselaw is never relevant to a

26  habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining

27  whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and

28  also may help us determine what law is 'clearly established'").  Furthermore, the AEDPA requires

U.S. District Court
E. D. California

4

1   that the Court give considerable deference to state court decisions.  The state court's factual findings

2   are presumed correct.  28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's

3   interpretation of its own laws.  *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

4          The initial step in applying AEDPA's standards is to "identify the state court decision that is

5   appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more

6   than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

7   reasoned decision.  *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that

8   later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

9   ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained

10  state court decisions to the last reasoned decision to determine whether that decision was contrary to

11  or an unreasonable application of clearly established federal law.  *Bailey v. Rae*, 339 F.3d 1107,

12  1112-13 (9th Cir. 2003).  Here, the Tulare County Superior Court, the California Court of Appeal,

13  and the California Supreme Court reached the merits of Petitioner's claims.  The California Supreme

14  Court and the California Court of Appeal's decisions were summary denials.  Thus, the Court looks

15  through those decisions to the last reasoned decision; namely, the decision by the Tulare County

16  Superior Court.  *See Nunnemaker*, 501 U.S. at 804.

17  **III.      Review of Petitioner's Claims**

18         The petition for writ of habeas corpus contains a sole grounds for relief, contending that

19  Petitioner's due process rights were violated by the Board's denial of parole.  (*See* Pet. at 6-19.)

20         The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there

21  exist[s] a liberty or property interest which has been interfered with by the State; the second

22  examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"

23  *Sass*, 461 F.3d at 1127.  The United States Constitution does not, by itself, create a protected liberty

24  interest in a parole date.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  Respondent argues that

25  Petitioner does not have a federally protected liberty interest in parole.  (Resp't Answer at 2:8.)

26  Respondent further contends that even if Petitioner has a federally protected liberty interest in parole,

27  such protections do not encompass the application of the some evidence standard.  (Id. at 3:9-3:10.)

28  Petitioner argues that the liberty interest vested in him by California's parole statutes and regulations

1   is afforded the protections of federal due process.  (Pet'r's Mem. P. & A. at 3-5.)  Additionally,

2   Petitioner contends that the some evidence standard is clearly established Supreme Court precedent

3   pursuant to *Superintendent v. Hill*, 472 U.S. 445 (1985).

4          Petitioner's reliance on *Hill* is misguided as the  Ninth Circuit Court of Appeals expressly

5   rejected this contention in *Hayward*, distinguishing the holding in *Hill* which applied to good time

6   credits from decisions pertaining to parole denials.  *Hayward*, 603 F.3d at 555-561.  The *Hayward*

7   court recognized that "[i]f there is any right to release on parole, or to release in the absence of some

8   evidence of future dangerousness, it has to arise from substantive state law creating a right to

9   release."  *Id*. at 555.  The Ninth Circuit further reiterated this principle, stating "[t]here is no general

10  federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law

11  creating an enforceable right to parole."  *Id*. at 559.  However, the *Hayward* court's opinion

12  contained the consistent and continual caveat that state law may in fact give rise to federal protection

13  for those rights.  The Ninth Circuit further elaborated, stating in a later decision, that "state created

14  rights may give rise to liberty interests that may be enforced as a matter of federal law."  *Pearson v.*

15  *Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221

16  (2005)).   The *Pearson* court found that, "*Hayward* necessarily held that compliance with state

17  requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that

18  state law gives rise to liberty interests that may be enforced as a matter of federal law is long-

19  established."  *Id*.

20         Thus, the next question is whether California's parole scheme gives rise to a liberty interest

21  enforced as a matter of federal law.  The Ninth Circuit has definitively concluded that "California

22  has created a parole system that independently requires the enforcement of certain procedural and

23  substantive rights, including the right to parole absent 'some evidence' of current dangerousness."

24  *Id*. at 611 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir.

25  2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest

26  created by the parole system of that state").  Consequently, the inquiry that a federal habeas court

27  must undertake in determining whether the denial of parole comports with the requirement of federal

28  due process is "whether the California judicial decision approving the governor's [or parole board's]

1  decision rejecting parole was an 'unreasonable application' of the California 'some evidence'

2  requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'"

3  *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted).

4          In conducting this inquiry, the Ninth Circuit has observed that:

5          Under California law, "the paramount consideration for both the Board and the
           Governor" must be "whether the inmate currently poses a threat to public safety and
6          thus may not be released on parole,"[citation], and "the facts relied upon by the Board
           or the Governor [must] support the ultimate decision that the inmate remains a threat
7          to public safety.

8  *Cooke*, 606 F.3d at 1214 (quoting *In re Lawrence*, 44 Cal. 4th 1181, 1210, 1213 (2008)); *see also*

9  Cal. Code Regs. tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an

10  unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable

11  and denied parole).  The *Lawrence* court held that, "[t]he relevant determination for the Board and

12  the Governor is, and always has been, an individualized assessment of the continuing danger and risk

13  to public safety posed by the inmate."  *In re Lawrence*, 44 Cal. 4th at 1227 (noting that "mere

14  recitation of the circumstances of the commitment offense, absent articulation of a rational nexus

15  between those facts and current dangerousness, fails to provide the required "modicum of evidence"

16  of unsuitability").  In setting forth the standard for federal habeas courts, the Ninth Circuit reiterated

17  this principle, stating that "a reviewing court must consider 'whether the identified facts are

18  *probative* to the central issue of *current* dangerousness when considered in light of the full record

19  before the Board or the Governor.'"  *Cooke*, 606 F.3d at 1214 (emphasis in original) (quoting *In re*

20  *Lawrence*, 44 Cal. 4th at 1221).

21      ***A.      State Court Decision***

22          In light of the Ninth Circuit's decisions discussed above, the inquiry now facing this Court is

23  whether the Tulare County Superior Court's decision was an objectively unreasonable application of

24  the California some evidence standard.  Initially, the Court notes that the Superior Court's decision is

25  an amalgamation of quotations from the parole hearing transcript and case law that is entirely devoid

26  of any analysis.  (*See* Pet. Ex. A.)  Thus, the Court cannot decipher with any certainty what standard

27  the Superior Court is applying in its decision.  The Superior Court's superficial citation to *Irons*, 505

28

1  F.3d at 851-52,[3] suggests that the Superior Court knew the Board's main inquiry was the inmate's

2  current dangerousness and arguably that the Superior Court applied the some evidence of current

3  dangerousness standard.[4]  However, in the next paragraph, the Superior Court cites to *In re*

4  *Bettencourt*, 156 Cal. App. 4th 780 (2007), in which the California Court of Appeal applied a some

5  evidence of the suitability factors standard.[5]  Consequently, the Court finds that an independent

6  review of the record is required to determine if the state court decision was an objectively

7  unreasonable application of the California some evidence standard.  *See Delgado v. Lewis*, 223 F.3d

8  976, 981-82 (9th Cir. 2000) (finding that where the court has "no basis other than the record for

9  knowing whether the state court correctly identified the governing legal principle or was extending

10  the principle into a new context," an independent review of the record is required to ascertain

11  whether the state court decision was objectively unreasonable).

12       In finding Petitioner posed an unreasonable risk of danger to society if released, the Board

13  relied on the circumstances of the commitment offense, Petitioner's misconduct while in prison, and

14  the psychological evaluation.  (Pet. Ex. D at 64-68.)  The Court examines each factor for evidence of

15  Petitioner's current dangerousness.

16  \\\

17  \\\

18  \\\

19

20      [3]The Superior Court citation for *Irons* is incorrect as *Irons v. Carey*, 479 F.3d 658 (9th Cir. 2007), was superseded and amended by *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007).  It is the later *Irons* decision from which the Superior Court quotes despite citing to the earlier *Irons* decision.

21

22      [4]The quoted portion of *Irons* used by the Superior Court is no longer applicable law as focusing solely on the minimum elements of the commitment offense was rejected by the California Supreme Court in its sister opinion to *Lawrence*.

23  *See In re Shaputis*, 44 Cal. 4th 1241, 1254-55 (2008) (stating that determination of inmate's current dangerousness is not "dependent solely upon whether the circumstances of the offense exhibit viciousness above the minimum elements required for conviction of that offense. Rather, the relevant inquiry is whether the circumstances of the commitment offense, when

24  considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense"); *see also In re Rozzo*, 172 Cal. App. 4th 40, 53 (2009) ("[I]n the wake of Lawrence,

25  it is clear that the fact that a prisoner's commitment offense involved an act that exceeds the minimum required for conviction is not a sufficient basis for affirming a Governor's reversal of a grant of parole.").

26

27      [5]If the Superior Court's decision was derived using a some evidence of suitability factor standard, the decision would be an objectively unreasonable application of the California some evidence standard as the California Supreme Court stated "that current dangerousness (rather than the mere presence of a statutory unsuitability factor) is the focus of the parole

28  decision." *In re Lawrence*, 44 Cal.4th at 1210.

1

### *1.      Commitment Offense*

2      The Court does not find the commitment offense by itself to be reliable evidence of current

3  dangerousness.  The offense was committed in 1994, over a decade prior to the parole hearing in

4  2006, and thus cannot by itself be probative of current dangerousness.  *See Cooke*, 606 F.3d at 1216

5  (finding that circumstance of the commitment offense that occurred in 1991 "cannot, standing alone,

6  constitute the requisite evidence of current dangerousness" for a 2002 parole hearing).  The

7  commitment offense can only constitute evidence of current dangerousness where something in the

8  petitioner's "pre- or post-incarceration history, or current demeanor and mental state," indicates that

9  the commitment offense remains probative to the petitioner's current dangerousness.  *In re*

10  *Lawrence*, 44 Cal. 4th at 1214.

11      Nothing in Petitioner's pre or post-incarceration history would permit reliance on Petitioner's

12  commitment offense.  As noted by the Board, Petitioner did not have a pre-incarceration record and

13  possessed a stable social history.  (Pet. Ex. D at 21-22.)  Similarly, Petitioner's post-incarceration

14  record does not support the Board's reliance on his commitment offense.  Petitioner incurred only

15  one disciplinary infraction in 1996, eleven years prior to the hearing.  (Pet. Ex. D at 28).  The

16  disciplinary infraction was a non-violent infraction for disobeying an order relating to the number of

17  weights Petitioner had on his pile.  (Pet. Ex. G at 7, 10; Pet. Ex. H at 2.)   Further, Petitioner has

18  continuously participated in Alcoholics Anonymous.  Petitioner has completed extensive self-help

19  programs, including over three hundred hours of anger management, and upgraded vocationally.  The

20  Court can identify nothing in Petitioner's post-conviction history that would render the commitment

21  offense reliable evidence of Petitioner's current dangerousness.  The Court's examination of

22  Petitioner's current demeanor or mental state provides a similar answer.  The psychologist observed

23  that Petitioner "expresses remorse and empathy for the victim's family" and that Petitioner's "insight

24  appears quite good, despite his limited responsiveness on the Life Term Offense."[6]  (Pet. Ex. G at

25  10.)  Thus, the Court finds that the circumstance of the commitment offense is not probative of

26  Petitioner's dangerousness.

27  _____

28      [6]The psychologist noted that Petitioner's limited response stems from his attorney's advice to not discuss the
commitment offense.

1      ### 2.        *Disciplinary Record Post-Incarceration*

2              As noted above, Petitioner received one disciplinary infraction a decade prior to the parole

3      hearing.  The disciplinary infraction was a CDC 115 for disobeying an order.[7]  The Court does not

4      find the disciplinary infraction to constitute evidence of Petitioner's current dangerousness.

5      Petitioner's case is nearly indistinguishable from the circumstances confronting the Ninth Circuit in

6      *Cooke*, 606 F.3d at 1215.  In *Cooke*, the Ninth Circuit examined whether two non-violent

7      disciplinary infractions that a habeas petitioner had incurred for disobeying prison rules and

8      regulations in the first year and a half of the his incarceration was probative of the petitioner's

9      current dangerousness.  The *Cooke* court found that these two minor non-violent disciplinary

10     infractions, "which occurred in 1992 and 1993, cannot reasonably be viewed as evidence that Cooke

11     posed an unreasonable risk to public safety in 2002, especially as he had been discipline-free for

12     nearly a decade."  *Id*.  Similarly, Petitioner's one non-violent disciplinary infraction in 1996, the first

13     year of his imprisonment, cannot be used as evidence of Petitioner's current dangerousness where

14     Petitioner has been discipline free for the almost ten years leading up to his parole hearing in 2006.

15     ### 3.        *Psychological Evaluation*

16             In the decision portion of the hearing, the Board deemed the psychological report, conducted

17     by Dr. Lille in September 2006, to be "not totally supportive of release" as there were "some, a few

18     issues that Dr. Lille addressed under the conclusion section." (Pet. Ex. D at 65-66.)  The Board

19     noted that Dr. Lille's report classified the commitment offense as "an isolated incident of aggression

20     based on a review of the record." (Id. at 66.)  However, the Board relied on Dr. Lille's concern that

21     there was limited information as a consequence of Petitioner's refusal to discuss the commitment

22     offense pursuant to counsel's advice.  The Court finds the Board's reliance on the psychological

23     report to be erroneous as the psychological report does not actually evidence current dangerousness.

24             The Court's review of the psychological evaluation reveals that Dr. Lille did express concern

25

26

27
        _____
28          [7]A CDC 115 documents misconduct believed to be a violation of law or otherwise not minor in nature. *See* Cal.Code
        Regs., tit. 15, § 3312(a)(3); *In re Gray*, 151 Cal.App.4th 379, 389 (2007).

1  about Petitioner's decision not to discuss the commitment offense on the advice of counsel.[8]

2  However, Dr. Lille's concern does not by itself constitute evidence of current dangerousness as

3  difficulty reviewing the degree to which an inmate has insight is not actual evidence that the inmate

4  lacks insight.  Utilizing Dr. Lille's report as evidence of current dangerousness is severely

5  undermined by the conclusions Dr. Lille reached in his report.  Under the assessment of

6  dangerousness section, Dr. Lille's report classified Petitioner as being a low risk for future violence

7  based on both his history and background as well as Petitioner's management of future risks.  (Pet.

8  Ex. G at 12-13.)  Under the conclusion section of report, Dr. Lille wrote, "[i]f released to the

9  community, there remains a minimal or *low risk* that he would be a danger to others in society based

10  on forensic actuarial data."  (Id. at 13) (emphasis in original).  Dr. Lille further observed that,

11  "Predicting which individuals will remain violent is clearly difficult to ascertain without releasing

12  the individual back into society at some risk.  In this case the risk appears as a *low risk* based on

13  historical factors and forensic/clinical data."  (Id.) (emphasis in original).  Thus, the Court finds that

14  the psychological evaluation fails to present any actual evidence of current dangerousness.

15        The Court's examination of the three factors relied upon by the Board reveals no reliable

16  evidence of Petitioner's current dangerousness.  Consequently, the Superior Court's conclusion, that

17  there was some evidence to support the Board's denial, was an objectively unreasonable application

18  of the California some evidence standard.

19  \\\

20  \\\

21  \\\

22

23  [8]The Court does not find that Dr. Lille's consideration of Petitioner's failure to talk about the commitment offense
    to be contradictory or violative of California's statutes.  California law specifically prohibits the *Board* from holding
24  Petitioner's refusal to discuss the crime against him in a parole consideration hearing.  *See In re Aguilar*, 168 Cal. App. 4th
    1479, 1491 (2008) (finding District Attorney's opposition to parole was unpersuasive as the opposition contended that inmate
25  must accept responsibility for the crime before he can be granted parole); *see also* Cal. Penal Code § 5011(b) ("The Board
    of Prison Terms shall not require, when setting parole dates, an admission of guilt to any crime for which an inmate was
26  committed."); Cal. Code Regs. tit. 15, § 2236 (" The board shall not require an admission of guilt to any crime for which the
    prisoner was committed. A prisoner may refuse to discuss the facts of the crime in which instance a decision shall be made
27  based on the other information available and the refusal shall not be held against the prisoner.") The Court does not read the
    statute to mean that a prison psychologist could not rely on Petitioner's failure to discuss the crime.  However, such a finding
28  is irrelevant to the instant case as Dr. Lille's report does not present any evidence of Petitioner's current dangerousness
    despite the doctor's concern about Petitioner's failure to discuss the commitment offense.

1

### B.    Constitutional Violation

2    The finding that the state court's decision was objectively unreasonable does not end a

3  federal habeas court's inquiry.  *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008) (citing 28

4  U.S.C. § 2241(c)(3) in noting that a federal habeas court's finding that state court's decision is

5  contrary to established federal law does not end that court's inquiry).  Petitioner is only entitled to

6  habeas corpus relief if his due process rights were violated by a lack of evidence supporting the

7  Board's denial of parole as a federal habeas court's "power to grant the writ of habeas corpus to a

8  state inmate depends on his actually being 'in custody in violation of the Constitution or laws . . . of

9  the United States.'" *Id*.  Pursuant to the Court's discussion above, there was no reliable evidence of

10  current dangerousness.  Thus, Petitioner's due process rights were violated and Petitioner is entitled

11  to habeas corpus relief.

12

### C.    Appropriate Remedy

13    Petitioner argues that he is entitled to release with the credit toward his mandatory parole

14  period for the time in which Petitioner has been unlawfully incarcerated.  (Pet'r's Mem. P. & A. at

15  15-16.)  Respondent contends that the appropriate remedy for a violation of Petitioner's due process

16  right is a new review by the Board, citing to *Benny v. United States Parole Commission*, 295 F.3d

17  977, 984-85 (9th Cir. 2002) in support of this contention.[9]  (Resp't Answer at 4:18.)

18    Initially, the Court notes that "federal habeas courts have 'broad discretion in conditioning a

19  judgment granting habeas relief' and in 'dispos[ing] of habeas corpus matters 'as law and justice

20  require.'" *Milot v. Haws*, 628 F. Supp. 2d 1152, 1156 (C.D. Cal. 2009) (quoting *Hilton v. Braunskill*,

21  481 U.S. 770, 775 (1987))*; see Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) (stating that

22  federal courts "have a fair amount of flexibility in fashioning specific habeas relief"); *see also*

23  *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (noting that federal habeas court is vested

24  with the largest power to control and direct the form of judgment to be entered).  More importantly,

25  ——————————————

26    [9]The California Supreme Court recently accepted Respondent's argument, finding that the appropriate remedy was
a new parole hearing.  *See In re Prather*, 50 Cal. 4th 238, 305-06 (2010).  However, the *Prather* decision stems from Article

27  III, section 3 of the California Constitution regarding separations of powers.  As noted above, a federal court's ability to
fashion a remedy for a grant of habeas corpus is flexible and the Court can find no authority supporting the proposition that
this discretion is limited by *state* law.

28

U.S. District Court
 E. D. California

1  the Court notes that Respondent's argument was explicitly rejected by the Ninth Circuit in *Pirtle v.*

2  *California Bd. of Prison Terms*, 611 F.3d 1015, 1025 (9th Cir. 2010).  In rejecting this argument, the

3  Ninth Circuit observed that:

4  > The State argues that the district court's remedy was improper, and that the appropriate remedy would be to remand the case to the Board with instructions to

5  > hold another hearing. There is no merit to this argument. *Federal courts have the latitude to resolve a habeas corpus petition "as law and justice require."* 28 U.S.C. §

6  > 2243. *Ordering the release of a prisoner is well within the range of remedies available to federal habeas courts.* "Habeas lies to enforce the right of personal

7  > liberty; when that right is denied and a person confined, the federal court has the power to release him."

8  *Id*. (emphasis added) (quoting *Fay v. Noia*, 372 U.S. 391, 430-31 (1963), *overruled on other*

9  *grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

10       Several district courts in this jurisdiction have similarly rejected the remedy of a new parole

11  hearing in this situation. *See Milot*, 628 F. Supp. 2d at 1155-56 (rejected the assertion that the only

12  remedy available to a habeas petition challenging the denial of parole by the Board was a new parole

13  consideration hearing and noting that California courts have rejected the same argument); *Ledesma v.*

14  *Marshall*, 658 F. Supp. 2d 1155, 1187-88 (E.D. Cal. 2009) (stating "the *Benny* case involved delay in

15  holding a revocation hearing for a federal parolee rather than an evidentiary challenge to denial of

16  parole under California law.  Ordering the BPH to re-assess the petitioner's current dangerousness

17  based on the same evidence this federal habeas court has deemed insufficient to sustain the

18  unsuitability finding would be a futile endeavor").

19       Additionally, some courts have approved crediting an inmate for the time he has been

20  incarcerated after the violation of his constitutional rights.  *See McQuillion v. Duncan*, 342 F.3d

21  1012, 1015 (9th Cir. 2003) (approving the practice of crediting unlawful time spent in custody

22  against a prisoner's period of parole supervision); *Cowans v. Marshall*, 2010 WL 2931132, at *1

23  (9th Cir. 2010) (unpublished) (holding that district court did not abuse discretion in ordering

24  immediate release without serving a period of parole for habeas petitioner); *see also Thompson v.*

25  *Carey*, 2009 WL 453053, * 4-5 (E.D. Cal. 2009) (noting that "remedy extends not only to addressing

26  physical confinement in an institution, but also to addressing restrictions on liberty imposed as

27  conditions of release on parole."), *but cf. Rosenkrantz v. California Bd. of Prison Terms*, 2010 WL

28

1   15131319, at *2-3 (C.D. Cal. 2010) (rejecting petitioner's argument that he should be credited with

2   excess time he served in prison); *Estrada v. Hartley*, 2010 WL 3463572, at *2 (E.D. Cal. 2010)

3   (holding that petitioner was not entitled to credit against his indeterminate supervisory parole

4   period).  Pursuant to existing Ninth Circuit authority, the Court recommends that Petitioner be

5   credited for the time he has unlawfully served as a result of the violation of his constitutional rights.

6   **RECOMMENDATION**

7        In accordance with the above, IT IS HEREBY RECOMMEND that:

8        1.    The petition for writ of habeas corpus be GRANTED;

9        2.    The Clerk of Court be directed to enter judgement for Petitioner;

10       3.    Judgment be entered granting a writ of habeas corpus as follows: The Board shall find

11             Petitioner suitable for parole at a hearing to be held within thirty (30) days of the

12             order adopting this decision, unless new evidence of his conduct in prison or change

13             in mental status subsequent to the November 2006 parole hearing is introduced and is

14             sufficient to support a finding that Petitioner currently poses an unreasonable risk of

15             danger to society if released on parole.  In the absence of any such new evidence

16             showing Petitioner's current dangerousness, the Board shall calculate a prison term

17             and release date for Petitioner in accordance with California law.  Further, if the

18             release date already has passed, Respondent shall, within ten (10) days of the Board's

19             hearing, release Petitioner from custody.  With respect to his presumptive period of

20             parole, Petitioner is to be credited for any time that has lapsed since the release date

21             calculated by the Board or when a finding of suitability at the November 2006 parole

22             consideration hearing would have become final pursuant to California Penal Code

23             sections 3041(b) and 3041.2(a)), whichever is later.

24       This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill,

25   United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

26   304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

27   Within thirty (30) days after being served with a copy, any party may file written objections with the

28   court and serve a copy on all parties.  Such a document should be captioned "Objections to

U.S. District Court
E. D. California

1   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

2   filed within ten (10) *court* days (plus three days if served by mail) after service of the objections.

3   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

4   parties are advised that failure to file objections within the specified time may waive the right to

5   appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

6   IT IS SO ORDERED.

7   **Dated:     September 16, 2010**              **/s/ John M. Dixon**
                                          UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. District Court

E. D. California